**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| TASHA MERCEDEZ SHELBY, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| v. | ) Case No. 1:21-CV-406 HSO-RPM |
| | ) |
| BURL CAIN, ET AL., | ) |
| | ) |
| *Respondents*. | ) |

---

***AMICUS CURIAE* BRIEF**
**BY THE MISSISSIPPI ASSOCIATION FOR JUSTICE**

---

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................. 3

STATEMENT OF INTEREST OF AMICUS CURIAE ..................................................... 5

STATEMENT OF THE FACTS ........................................................................................ 6

SUMMARY OF THE ARGUMENT ................................................................................. 6

ARGUMENT ..................................................................................................................... 6

      I.      Shelby Should be Awarded a New Trial Based on New Shaken Baby Science and theEmergence of a Significant Dispute within the Medical Community so that the Jury Can Determine Whether there is a Reasonable Doubt as to Her Guilt. ............ 6

      II.     Mississippi *Daubert* Case Law Further Underscores the Jury's Role in Evaluating Competing Expert Testimony. ................................................................................. 10

      A.     The Court is the Gate-keeper Charged with Determining Whether the Expert's Testimony is Reliable and Relevant, *Not* Whether the Expert is Correct. .............. 10

      B.     The Expert Testimony at Issue in Shelby's Case Regarding Shaken Baby Syndrome Should be Evaluated by the Jury at a New Trial. ................................................... 12

      1.     The Expert Testimony is Reliable under Rule 702 and *Daubert*. ........................... 12

      2.     The Expert Testimony is also Relevant under Rule 401, Rule 702 and .............. 15 Daubert. ................................................................................................................. 15

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Adcock v. Mississippi Transp. Comm'n*, 981 So. 2d 942, 947 (Miss.2008) .................................................. 15

*Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988)…………………………………………………………14

*Cavazos v. Smith*, 565 U.S. 1, 13, 132 S. Ct. 2, 10 (2011) ............................................................................ 8

*Commonwealth v. Epps*, 474 Mass. 743, 53 N.E.3d 1247 (2016) ................................................................ 7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786 (1993)……………………………..*passim*

*Del Prete v. Thompson*, 10 F.Supp.3d 907 (N.D. Ill. 2014) ......................................................................... 8

*Ex parte Chaney*, 563 S.W.3d 239, 260, 263 (Tex. Crim. App. 2018) ........................................................ 7

*Ex parte Henderson*, 246 S.W.3d 690 (Tex. Crim. App. 2007) .................................................................... 7

*Ex Parte Robbins*, 478 S.W.3d 678 (Tex. Crim. App. 2014) ........................................................................ 7

*Grant v. Ford Motor Co.*, 89 So. 3d 655, 665 (Miss. Ct. App. 2012) ........................................................ 11

*Hill v. Mills*, 26 So. 3d 322, 338 (Miss.2010) ............................................................................................ 12

*House v. Bell,* 547 U.S. 518, 539 (2006)…………………………………………………………………15

*Hubbard ex rel. Hubbard v. McDonald's Corp.*, 41 So. 3d 670, 675 (Miss. 2010) ................. 11, 12, 14, 15

*Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998)……………………………………………...14

*Lockett v. Anderson*, 230 F.3d 695, 709 n.24 (5th Cir. 2000)…………………………………………14

*Patterson v. Tibbs*, 60 So. 3d 742, 748–49 (Miss. 2011)…………………………………………11, 13, 14

*People v. Bailey*, 41 N.Y.S.3d 625 (N.Y. App. Div. 2016) .......................................................................... 8

*Poole v. Avara*, 908 So.2d 716, 722 (Miss.2005)…………………………………………………11, 14

*Shelter Ins. Co. v. Ford Motor Co.*, No. CIV.A. 203CV150PA, 2006 WL 318821, at *2 (N.D. Miss. Feb. 9, 2006), aff'd sub nom, *Shelter Ins. Companies v. Ford Motor Co.*, No. 06-60295, 2006 WL 3780474 (5th Cir. Dec. 18, 2006) ............................................................................................................................... 12

*Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005) ......................................................................................... 6, 7

*State v. Edmunds*, 746 N.W.2d 590 (Wis. App. 2008) .................................................................... 7, 8, 9, 10

*United States v. MacDonald*, 641 F.3d 596, 598 (4th Cir. 2011)…………………………………………15

*Worthy v. McNair*, 37 So. 3d 609, 614 (Miss. 2010) .....................................................................……….10

**Rules**

Fed. R. Evid. 702…………………………………………………………  …………………………..*passim*

Miss. R. Evid. 702…………………………………………………………………………………..*passim*

**Other Authorities**

Bandak, *Shaken Baby Syndrome: A Biomechanics Analysis of Injury Mechanisms*, 151 Forensic Sci. Int'l 71, 78 (2005) ........................................................................................................................... 13

Donohoe, *Evidence–Based Medicine and Shaken Baby Syndrome, Part I: Literature Review*, 1966–1998, 24 Am. J. Forensic Med. & Pathology 239, 241 (2003) ........................................................ 13

Leestma, *Case Analysis of Brain–Injured Admittedly Shaken Infants*, 54 Cases, 1969–2001, 26 Am. J. Forensic Med. & Pathology 199, 211 (2005)……………………………………………………………13, 14

Minns, *Shaken Baby Syndrome: Theoretical and Evidential Controversies*, 35 J. Royal College of Physicians of Edinburgh 5, 10 (2005)..................................................................................... 13

Squier, *Shaken Baby Syndrome: The Quest for Evidence*, 50 Developmental Med. & Child Neurology 10, 13 (2008)...................................................................................................................... 14

Uscinski, *Shaken Baby Syndrome: An Odyssey*, 46 Neurol. Med. Chir. (Tokyo) 57, 59 (2006)…………13

## STATEMENT OF INTEREST OF AMICUS CURIAE

The Mississippi Association for Justice ("MAJ") is an organization composed of attorneys that work to ensure that any person who is injured by the misconduct and negligence of others can get justice in the courtroom, even when taking on the most powerful interests. The Mississippi Association for Justice is committed to strengthening the civil justice system so that deserving individuals can get justice and wrongdoers are held accountable. The organization opposes efforts to weaken basic legal protections and further stack the deck against average Mississippians. All Americans benefit when individuals represented by attorneys have a fair chance to get justice through our civil justice system.

Formed in 1962, the founding members of MAJ consisted of a small group of dedicated lawyers who were determined to provide a unified voice for civil justice in the courtrooms of Mississippi. Today, more than 50 years later,  the Mississippi Association for Justice has over 600 attorneys dedicated to representing people, not corporations. The organization's members are committed to protecting the health and safety of Mississippi families, to enhancing consumer protections, and to preserving each and every citizen's right to trial by jury and access to the courts.

The Mississippi Association for Justice has a strong interest in ensuring that civil litigants can support their case through the testimony of qualified expert witnesses and that testimony about new or changed science is admissible—an interest that is directly implicated by Tasha Shelby's case involving expert testimony about Shaken Baby Syndrome (SBS). The Mississippi Association for Justice did not receive a monetary contribution for the preparation of this brief, nor is it a party in the suit.

**STATEMENT OF THE FACTS**

In the interest of concision, the Mississippi Association for Justice adopts by reference the statement of facts as set forth in the Petitioner's Brief.

**SUMMARY OF THE ARGUMENT**

The shift in the medical understanding of the Shaken Baby Syndrome theory is newly discovered evidence. It is vital for a jury to have the opportunity to review new medical opinions about Shaken Baby science and the revised opinion of the State's medical expert from trial in the Shelby case, in order to ensure the defendant's federal constitutional right to due process. A jury could find that the competing medical opinions about the Shaken Baby theory gives rise to a reasonable doubt of Shelby's guilt—and the jury should be given the opportunity to hear both sides of the debate and make that determination.

The *Mississippi Rules of Evidence* and Mississippi and federal *Daubert* case law favor providing the jury with the opportunity to hear from experts from both litigants. Under *Daubert*, the court is charged with the responsibility of making initial reliability and relevancy determinations, but the jury is the final arbiter of credibility. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 113 S.Ct. 2786 (1993). Here, Shelby's medical experts' testimony is both reliable and relevant, and thus, the jury should have the opportunity to hear the testimony at a new trial.

**ARGUMENT**

I.     **Shelby Should be Awarded a New Trial Based on New Shaken Baby Science and the Emergence of a Significant Dispute within the Medical Community so that the Jury Can Determine Whether there is a Reasonable Doubt as to Her Guilt.**

Numerous courts have recognized that advancements in science and medicine may constitute newly discovered evidence. *See e.g., Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005) (concluding petitioner demonstrated a credible claim of actual innocence entitling him to equitable

tolling of habeas limitations period based on new evidence, including the changed testimony of two forensic pathologists that testified at trial for the prosecution); *Ex Parte Robbins*, 478 S.W.3d 678 (Tex. Crim. App. 2014) (finding that a medical examiner's changed opinion that the death was not a homicide was relevant new scientific evidence and contradicted the evidence relied upon by the State at trial). A shift in science can undermine evidence relied on at trial, and by extension, the conviction itself. *See, e.g,. Souter*, 395 F.3d 577 (finding that the new evidence "when taken together chips away at the rather slim circumstantial evidence upon which Souter was convicted") (internal quotation marks omitted); *Ex parte Chaney*, 563 S.W.3d 239, 260, 263 (Tex. Crim. App. 2018) ("The body of scientific knowledge underlying the field of bitemark comparisons has evolved since his trial in a way that contradicts the scientific evidence relied on by the State at trial. . . . The State's case would have been incredibly weakened had Chaney's newly available scientific evidence been presented at his trial. Instead of supporting the conclusions that Chaney bit [the victim] at the time of the murders, the evidence would now show, at most, only that John might have been bitten two to three days before the murders and that if [the victim] was bitten by someone, that person could be Chaney (or anyone else on the planet whose dentition has not been excluded). The State's remaining evidence was circumstantial and weak. The State even said during its closing that it would not have sought an indictment against Chaney without the bitemark evidence.").

Courts have similarly begun to acknowledge the shift in medical and scientific understandings of the SBS theory and its role in post-conviction proceedings. *See State v. Edmunds*, 746 N.W.2d 590 (Wis. App. 2008); *Ex parte Henderson*, 246 S.W.3d 690 (Tex. Crim. App. 2007) (granting stay of execution and remanding for further post-conviction proceedings on the basis of the medical examiner's reevaluation of expert opinion that a short fall could not have caused the child's brain injuries); *Commonwealth v. Epps*, 474 Mass. 743, 53 N.E.3d 1247 (2016);

*People v. Bailey*, 41 N.Y.S.3d 625, 627 (N.Y. App. Div. 2016); *see also Del Prete v. Thompson*, 10 F. Supp. 3d 907 (N.D. Ill. 2014); *see generally Cavazos v. Smith*, 565 U.S. 1, 13, 132 S. Ct. 2, 10 (2011) (Ginsburg, J., dissenting) (quoting *State v. Edmunds*, 308 Wis.2d 374, 385, 746 N.W.2d 590, 596) ("Doubt has increased in the medical community 'over whether infants can be fatally injured through shaking alone.'")). The state trial court below even noted that "[s]haken baby syndrome may have been involved in legitimate debates in the years since Bryan's death and Shelby's trial." Order at 20.

As the SBS diagnosis has come under increasing scrutiny and as experts repudiate their initial diagnoses, courts are faced with the conundrum of how to resolve this "new science" in a post-conviction proceeding. In *State v. Edmunds*, 746 N.W.2d 590 (Wis. App. 2008), the Court of Appeals of Wisconsin granted the petitioner a new trial based on the "significant and legitimate debate in the medical community [that] has developed in the past ten years over whether infants can be fatally injured through shaking alone." 746 N.W.2d 590, 596 (Wis. App. 2008). The appellate court identified "a shift in mainstream medical opinion" and "recognized,as did the circuit court, that there are now competing medical opinions as to how [the infant's] injuries arose." Importantly, although the appellate court determined that "the new evidence [did]not completely dispel the old evidence," the court nonetheless concluded that "the record establishe[d] that there is a reasonable probability that a jury, looking at both the new medical testimony and the old medical testimony, would have a reasonable doubt as to [the petitioner's] guilt." *Id.* The appellate court further determined that *the lower court applied the wrong legal standard and clarified that it is not the court's role to weigh the newly discovered medical evidence*. Instead, the appellate court reasoned:

> [O]nce the circuit court found that Edmund's newly discovered medical evidence was credible, it was required to determine whether there was a reasonable probability that a jury, hearing all the medical evidence, would have a reasonable doubt as to [the petitioner's] guilt. The question is not answered by a determination

8

that the State's evidence was stronger. As explained in [*State v. McCallum*, 208 Wis.2d 463, 561 N.W.2d 707 (1997)], a jury could have a reasonable doubt as to a defendant's guilt even if the State's evidence is stronger.

*Id*. at 597. By remanding for a new trial, the Court of Appeals of Wisconsin recognized the importance of allowing the jury to hear and evaluate new medical evidence about Shaken Baby Science.

In Shelby's case, instead of only making an initial credibility assessment and ordering a new trial to allow the jury to weigh the new evidence against the old, the circuit court dismissed Dr. Ophoven's testimony as speculative and concluded that the testimony at the evidentiary hearing was "full of speculation, ifs, maybes, perhaps, and could haves." Order at 25. The Court determined that "there are too many scenarios that could have been . . . to allow me to conclude with any certainty what the factors were that precipitated the initial event." The circuit court also stated that "Shelby's version of events by her statement and her theories regarding falls and/or seizures introduced through the opinions of her experts at the evidentiary hearing failed to establish a cause or explanation for all of the injuries that Bryan presented at the hospital." Order at 20. But in *Edmund*, despite acknowledging that "there are now competing medical opinions as to how [the infant's] injuries arose" and that "the new evidence [did] not completely dispel the old evidence," the Wisconsin Appellate Court concluded that a new trial was necessary.

In dismissing the impact of Dr. Riddick's changed opinion and the testimony concerning new SBS research, the circuit court improperly infringed on the domain of the jury. Instead of determining whether a jury should be presented with testimony concerning both sides of the SBS debate and have the opportunity to review the State's evidence in light of Dr. Riddick's revised opinion, the circuit court determined that Shelby's evidence was not sufficiently conclusive. The circuit court thus failed to appreciate that if Shelby were awarded a new trial, the jury would be faced with competing medical opinions representing a fierce debate within the medical community

and might therefore—looking at both the new medical testimony and the old medical testimony—have a reasonable doubt as to Shelby's guilt. *See Edmunds*, 746 N.W.2d at 599.

## II. Mississippi *Daubert* Case Law Further Underscores the Jury's Role in Evaluating Competing Expert Testimony.

In *Edmunds*, the Wisconsin Appellate Court granted a new trial to the petitioner in order to allow a jury to have the opportunity to weigh the new medical testimony against the State's evidence. *State v. Edmunds*, 746 N.W.2d 590 (Wis. App. 2008). The *Edmunds* Court determined a new trial was proper even if the State's evidence appeared stronger. *Id.* at 597. In Mississippi, juries are similarly endowed with the responsibility of evaluating competing expert testimony under Rule of Evidence 702 and *Daubert v. v. Merrell Dow Pharmaceuticals, Inc.*

### A. The Court is the Gate-keeper Charged with Determining Whether the Expert's Testimony is Reliable and Relevant, not Whether the Expert is Correct.

Mississippi Rule of Evidence 702 governs the admissibility of expert testimony. Mississippi Rule of Evidence 702 is identical to Rule 702 of the Federal Rules of Evidence. *Worthy v. McNair*, 37 So. 3d 609, 614 (Miss. 2010). Under Rule 702, the trial court is endowed with the responsibility of initially reviewing proposed expert testimony. Rule 702 states

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Miss. R. Evid. 702. The trial court, therefore, is responsible for determining "whether the expert testimony rests on a *reliable* foundation and is *relevant* to the matter." *McNair*, 37 So. 3d at 615 (emphasis in original).

This two-pronged inquiry into the reliability and admissibility of expert testimony is guided by the factors promulgated by the Supreme Court of the United States in *Daubert v. Merrell Dow Pharmaceuticals, Inc. Id.* at 614 (citing *Miss. Transp. Comm'n v. McLemore,* 863 So.2d 31, 35 (Miss.2003)) ("In *Mississippi Transportation Commission v. McLemore,* the Supreme Court of Mississippi adopted the "*Daubert/Kumho*" rule—the Supreme Court of the United States' standard as set forth in *Daubert,* 509 U.S. 579, 113 S.Ct. 2786, and *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)—as the standard for assessing the reliability and admissibility of expert testimony."). "In determining whether expert testimony is admissible, trial judges act as gatekeepers and must determine whether the proposed testimony meets the requirements as set forth in Rule 702 and *Daubert's* relevance and reliability prongs." *Grant v. Ford Motor Co.*, 89 So. 3d 655, 665 (Miss. Ct. App. 2012) (citing *Patterson v. Tibbs*, 60 So.3d 742, 749 (Miss. 2011)). The rules governing the admissibility of expert testimony, however, are intended to be liberal; *Daubert* and *Kumho* relaxed the traditional barriers to opinion testimony. *McNair*, 37 So. 3d at 614–15 (quoting *McLemore*, 863 So.2d at 36); *see also Poole v. Avara*, 908 So.2d 716, 722 (Miss.2005).

Although trial courts are expected to serve a gatekeeping function, the admissibility standards under Rule 702 and *Daubert* are flexible. *Hubbard ex rel. Hubbard v. McDonald's Corp.*, 41 So. 3d 670, 675 (Miss. 2010) (quoting *Daubert*, 509 U.S. at 594, 113 S.Ct. 2786)). Furthermore, the Supreme Court of Mississippi has established that "an expert's testimony is presumptively admissible when relevant and reliable." *Id*. at 675–76 (quoting *McLemore,* 863 So.2d at 39)). Moreover, although the trial court has the responsibility to determine whether "a proposed expert's opinion has 'a reliable basis in the knowledge and experience of the relevant discipline," *McNair,* 37 So.3d at 614 n. 3 (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137,158, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)), the "weight and  credibility of expert testimony are matters for

determination by the trier of fact." *Hubbard*, 41 So. 3d at 675–76 (citing *Univ. Med. Ctr. v. Martin,* 994 So.2d 740, 747 (Miss.2008)); *see also Hill v. Mills*, 26 So. 3d 322, 338 (Miss.2010) (quoting *Daniels v. GNB, Inc.*, 629 So.2d 595, 602 (Miss.1993)) ("'[T]he reasonableness of an expert's opinion and the weight to be afforded thereto' are always questions of fact for the jury."). Therefore, **the trial court must not supplant the jury as the true determiner of an expert's credibility**. *See e.g.*, *Shelter Ins. Co. v. Ford Motor Co.*, No. CIV.A. 203CV150PA, 2006 WL 318821, at *2 (N.D. Miss. Feb. 9, 2006), aff'd sub nom, *Shelter Ins. Companies v. Ford Motor Co.*, No. 06-60295, 2006 WL 3780474 (5th Cir. Dec. 18, 2006) ("Under the familiar *Daubert*/*Kumho* standards and their progeny, it is not the court's duty to determine in a motion in limine to exclude an expert's testimony whether the expert in question is correct. This decision falls squarely within the province of the jury. Essentially, the court is the gate-keeper charged with determining whether the expert's testimony is reliable and relevant enough to not be junk science or mere paid-for opinions.")).

  **B. The Expert Testimony at Issue in Shelby's Case Regarding Shaken Baby Syndrome Should be Evaluated by the Jury at a New Trial.**

  Dr. Riddick's revised opinion and testimony about Shaken Baby Syndrome is admissible under Rule 702 and *Daubert.* The expert testimony is admissible because the circuit court has already acknowledged the existence of a credible debate about SBS in the medical community. Furthermore, the testimony is both reliable and highly relevant to the case: the new evidence not only undermines the prosecution's theory of the case but challenges whether the death was even a homicide—and therefore, whether a crime occurred at all.

  **1. The Expert Testimony is Reliable under Rule 702 and *Daubert.***

  Under Rule 702 and *Daubert*, the trial court must first ascertain whether an expert's testimony is reliable. "*Daubert* enumerated several factors which the trial courts may consider when determining if expert testimony is reliable: (1) whether the expert's theory can be or has been

tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; and (4) the general acceptance that the theory has garnered in the relevant expert community." *Patterson v. Tibbs*,60 So. 3d 742, 748–49 (Miss. 2011) (citing *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786). The factors, however, are "nonexclusive, and their application depends on the nature of the issue, the expert's expertise, and the subject of the testimony offered by the expert." *Id*. at 749 (citing *Miss.Transp. Comm'n v. McLemore*, 863 So.2d 31, 37 (Miss.2003)).

Under this standard for reliability of expert testimony promulgated by the U.S. Supreme Court and the Supreme Court of Mississippi, Dr. Riddick's revised opinion as to the cause of Bryan IV's death and the additional medical testimony about the advances in Shaken Baby Syndrome are reliable. The experts' testimony about the shift in understanding of SBS is supported by peer-reviewed literature. *See, e.g.*, Donohoe, *Evidence–Based Medicine and Shaken Baby Syndrome, Part I: Literature Review*, 1966–1998, 24 Am. J. Forensic Med. & Pathology 239, 241 (2003); Bandak, *Shaken Baby Syndrome: A Biomechanics Analysis of Injury Mechanisms*, 151 Forensic Sci. Int'l 71, 78 (2005) ("Head acceleration and velocity levels commonly reported for SBS generate forces that are far too great for the infant neck to withstand without injury. [A]n SBS diagnosis in an infant without cervical spine or brain stem injury is questionable and other causes of the intracerebral injury must be considered."); Minns, *Shaken Baby Syndrome: Theoretical and Evidential Controversies*, 35 J. Royal College of Physicians of Edinburgh 5, 10 (2005); Uscinski, *Shaken Baby Syndrome: An Odyssey*, 46 Neurol. Med. Chir. (Tokyo) 57, 59 (2006) ("[T]he hypothetical mechanism of manually shaking infants in such a way as to cause intracranial injury is based on a misinterpretation of an experiment done for a different purpose, and contrary to the laws of injury biomechanics as they apply specifically to the infant anatomy."); Leestma, *Case Analysis of Brain–Injured Admittedly Shaken Infants*, 54 Cases, 1969–2001, 26 Am. J. Forensic

Med. & Pathology 199, 211 (2005) ("[M]ost of the pathologies in allegedly shaken babies are due to impact injuries to the head and body."); Squier, *Shaken Baby Syndrome: The Quest for Evidence*, 50 Developmental Med. & Child Neurology 10, 13 (2008).

Although there may not be consensus within the medical community about SBS, Dr. Riddick's revised opinion and the opinions of Dr. Monson, Dr. Mack, and Dr. Ophoven are well supported. In Mississippi, an expert's testimony must be reliable, but consensus among peer-reviewed materials is not a requirement of admissibility. *Patterson*, 60 So.3d at 750. Moreover, the Supreme Court of Mississippi has also determined that "[r]equiring that the subject of expert testimony be known to a certainty is not necessary either, however, because as the *Daubert* Court pointed out, 'there are no certainties in science.'" *Id*. (quoting *Poole v. Avara*, 908 So.2d 716, 723–24 (Miss.2005)).

In evaluating reliability, the court's "focus ... must be solely on principles and methodology, not on the conclusions that they generate." *Hubbard*, 41 So. 3d 670, 675 (Miss. 2010) (quoting *Daubert*, 509 U.S. at 591, 113 S.Ct. 2786)). Similarly, here, the circuit court should have focused not on the conclusions espoused by Shelby's experts, but rather, whether their opinions were based on reliable studies and methods. The Court should have made an initial reliability assessment and considered whether a jury would determine that the experts' testimony is credible and creates reasonable doubt as to Shelby's guilt.

Finally, in considering this reliable evidence, federal courts have long recognized that an evidentiary error may warrant habeas corpus relief "if the error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause." *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998); *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988); *Lockett v. Anderson*, 230 F.3d 695, 709 n.24 (5th Cir. 2000). Under the Antiterrorism and Effective Death Penalty Act of 1996, newly discovered evidence is considered within the context of the "evidence as a whole,"

which can include all evidence. "Simply put, the 'evidence as a whole' is exactly that: all the evidence put before the court at the time of its … evaluation." *United States v. MacDonald*, 641 F.3d 596, 598 (4th Cir. 2011); *see also House v. Bell,* 547 U.S. 518, 539 (2006) ("the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory.'"). Thus, the reliability of the newly discovered evidence is made even more apparent in the context of all the evidence presented over the course of the case.

### 2. The Expert Testimony is also Relevant under Rule 401, Rule 702 and *Daubert*.

In Mississippi, "[r]elevant evidence is that which has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Adcock v. Mississippi Transp. Comm'n*, 981So. 2d 942, 947 (Miss.2008) (quoting Miss. R. Evid. 401). "Rule 401 favors admission if the evidence has *any* probative value at all." *Id*. (quoting *Holladay v. Holladay*, 776 So.2d 662, 676 (Miss.2000)) (emphasis added). "Relevance is established when the expert testimony is sufficiently tied to the facts of the case that it will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Hubbard*, 41 So. 3d at 675 (quoting *Daubert*, 509 U.S.at 591, 113 S.Ct. 2786)).

In Shelby's case, a revised medical opinion from the State's Medical Examiner who performed Bryan IV's autopsy is clearly probative. Dr. Riddick no longer agrees with his original testimony that Bryan IV's death must have been a homicide. Dr. Riddick's revised diagnosis undermines the very evidence that the State relied on to prosecute Shelby and what was presented to the jury at trial. Moreover, the testimony about the shift in mainstream understandings of SBS from Dr. Monson, Dr. Mack, and Dr. Ophoven is also relevant. This testimony is tied to the facts of the case and would assist the trier of fact to understand the medical evidence and also to determine whether Bryan IV's death was accidental—and therefore, whether a crime even occurred.

## CONCLUSION

For the foregoing reasons, the Mississippi Association for Justice urges this Court to acknowledge that a jury should have the opportunity to hear medical testimony challenging the Shaken Baby Syndrome diagnosis from Shelby's experts, and that to do otherwise is a violation of the defendant's federal due process rights, thus requiring reversal and remand for a new trial. Allowing the circuit court's decision to stand would not only contravene federal *Daubert* law and Rule 702 case law, but also severely disrupt the balance of authority between circuit court judges and juries.

**MISSISSIPPI ASSOCIATION FOR JUSTICE**
Amicus Curiae

BY:  GRAHAM P. CARNER

*/s/ Graham P. Carner*
GRAHAM P. CARNER, MS Bar No. 101523

**OF COUNSEL:**

Graham P. Carner (MSBN 101523)
Graham P. Carner, PLLC
775 N. Congress Street
Jackson, MS 39202
T: 601-949-9456
E: graham.carner@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2022, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ Graham P. Carner*