IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **TASHA MERCEDEZ SHELBY** | § | **PETITIONER** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:21-cv-406-HSO-RPM** |
| | § | |
| | § | |
| **BURL CAIN, Commissioner,** | § | |
| **Mississippi Department of** | § | |
| **Corrections; MARC MCCLURE,** | § | |
| **Superintendent of Central** | § | |
| **Mississippi Correctional Facility;** | § | |
| **LYNN FITCH, Attorney General** | § | |
| **of the State of Mississippi** | § | **RESPONDENTS** |

**MEMORANDUM OPINION AND ORDER OVERRULING PETITIONER
TASHA MERCEDEZ SHELBY'S OBJECTION [44] TO THE REPORT AND
RECOMMENDATIONS [42] OF THE UNITED STATES MAGISTRATE
JUDGE; ADOPTING THE REPORT AND RECOMMENDATIONS [42];
GRANTING RESPONDENTS' MOTION [16] TO DISMISS; AND
DISMISSING THE PETITION [1] FOR WRIT OF HABEAS CORPUS AND
THE AMENDED WRIT [10] OF HABEAS CORPUS WITH PREJUDICE**

BEFORE THE COURT is the Report and Recommendations [42] of United

States Magistrate Judge Robert P. Myers, Jr., which recommends granting

Respondents Burl Cain, Marc McClure, and Lynn Fitch's (collectively,

"Respondents") Motion [16] to Dismiss Petitioner Tasha Mercedez Shelby's

("Shelby" or "Petitioner") Petition [1] for Writ of Habeas Corpus brought under 28

U.S.C. § 2254 by a person in state custody and her Amended Writ [10] of Habeas

Corpus. Petitioner has filed an Objection [44] to the Report and Recommendations

[42] and Respondents have filed a Response [46]. After due consideration of the

Report and Recommendations [42], the record, the parties' filings, and relevant

legal authority, the Court finds that Petitioner's Objection [44] should be overruled, that the Report and Recommendations [42] should be adopted as the finding of this Court, that Respondents' Motion [16] to Dismiss should be granted, and that Petitioner's Petition [1] and Amended Writ [10] should be dismissed with prejudice.

## I. <u>BACKGROUND</u>

A.   <u>Procedural history</u>

On June 15, 2000, a jury in the Circuit Court of Harrison County, Mississippi, Second Judicial District, convicted Shelby of capital murder for the death of her two-year old stepson, Bryan Thompson IV ("Little Bryan"). Ex. [1-20] at 1. The following day, she was sentenced by the Harrison County Circuit Court to life in prison without parole. *Id.* Shelby sought a direct appeal of her conviction, which was affirmed by the Court of Appeals of Mississippi on March 26, 2002. *See generally* Ex. [16-1].

On March 25, 2005, Shelby sought post-conviction relief for the first time, filing an "Application for Leave to File Motion for Post-Conviction Relief" in the Supreme Court of Mississippi. Ex. [1-21] at 1-2. On April 28, 2005, the Application was denied, on the grounds that Shelby had failed to demonstrate ineffective assistance of counsel. Ex. [1-22] at 2.

On July 30, 2015, Shelby filed a second motion for leave to file a petition for post-conviction relief in the Supreme Court of Mississippi, Ex. [15-12] at 19 (filed as restricted), and on January 12, 2016, she filed a supplemental motion, *id.* at 8. On August 8, 2016, the motions were granted and Shelby was permitted to file her

petition in the trial court. Ex. [1-26]. Following an evidentiary hearing that began on April 24, 2018, the Harrison County Circuit Court denied the petition on December 7, 2018, Ex. [10-34], and the Court of Appeals of Mississippi affirmed the denial on August 4, 2020, Ex. [10-37] at 1-24. Shelby's subsequent motion for a rehearing of the decision was denied on November 17, 2020, Ex. [10-39], and her petition for writ of certiorari in the Supreme Court of Mississippi was denied on February 9, 2021, Ex. [10-41].

B.     Shelby's § 2254 Petition [1]

On December 21, 2021, Shelby filed the instant Petition [1] for Writ of Habeas Corpus in this Court requesting that her judgment and sentence be vacated. Pet. [1] at 10. Shelby argued that she was entitled to a new trial because significant new evidence fundamentally undermined Little Bryan's diagnosis at trial of "Shaken Baby Syndrome," such that the Mississippi Court of Appeals' decision was based on an unreasonable determination of the facts in light of the evidence presented, and her claim for relief should not be subject to any procedural bars because she is factually innocent. *See generally* Mem. [2]. Following the Magistrate Judge's Order [9] to submit an amended petition that "complies with the requirements of 28 U.S.C. § 2242 and the Rules Governing Section 2254 Cases in the United States District Courts," Shelby filed an Amended Writ [10] of Habeas Corpus raising the same claims.

On June 3, 2022, Respondents filed a Motion [16] to Dismiss the Petition [1] and Amended Writ [10] as time barred. *See generally* Mot. [16]. Specifically,

Respondents argued that Shelby's Petition [1] was untimely under the one-year statute of limitations set forth in 28 U.S.C. § 2244(d); that she failed to establish a factual predicate because her claims were discoverable by due diligence as early as 2001; that she was not entitled to statutory tolling of the statute of limitations; that she failed to make a showing of "actual innocence" sufficient to permit her to overcome the statute of limitations; and that she was not entitled to an evidentiary hearing. *Id.* Shelby filed a Response [26] and Respondents filed a Reply [34]. With leave of Court, several briefs by amici curiae were also submitted. *See* Br. [24] by Center for Integrity in Forensic Sciences and The Innocence Network; Br. [27] by Mississippi Association for Justice; Br. [38] by Southern Center for Human Rights.

C.    The Magistrate Judge's Report and Recommendations [42]

On February 7, 2023, the Magistrate Judge entered a Report and Recommendations [42] recommending that Respondents' Motion [16] to Dismiss be granted and that Shelby's Petition [1] and Amended Writ [10] "be dismissed for a lack of timeliness and a failure to establish actual innocence." R. & R. [42] at 21.

The Magistrate Judge first concluded that Shelby's capital murder conviction and sentence became final on April 9, 2002, and that under 28 U.S.C. § 2244(d)(1)(A), her deadline to file a federal habeas petition expired one year later, on or before April 9, 2003. R. & R. [42] at 5. The Magistrate Judge rejected Shelby's argument that her habeas petition instead became due on January 25, 2015, when she received reports from medical experts opining on the changes in science regarding Shaken Baby Syndrome, or on June 18, 2018, when Little Bryan's death

certificate was amended by the Medical Examiner who testified for the State at trial, Dr. LeRoy Riddick, to change his cause of death to accidental. *Id.* at 9. Shelby theorizes that those were "the date[s] on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). The Magistrate Judge concluded that reports questioning the validity of Shaken Baby Syndrome and changing science were available as early as the time of Shelby's trial in 2000, or were at least discoverable by due diligence before 2015. *Id.* at 6-7. The Magistrate Judge noted that Dr. Riddick testified at Shelby's post-conviction relief hearing that he "'wasn't comfortable with [S]haken [B]aby [S]yndrome itself' at the time of trial," and that he had received articles describing changes in scientific opinion regarding Shaken Baby Syndrome and short fall injuries prior to the date of trial. *Id.* at 6. With respect to the death certificate, the Report and Recommendations [42] concluded that "for the same reasons [Shelby's 2015 factual predicate fails,] her 2018 factual predicate fails." *Id.* at 7. It further concluded that Shelby was not entitled to equitable tolling of the statute of limitations because she failed to demonstrate extraordinary circumstances that prevented her from timely filing her Petition [1], or that she had diligently pursued her rights. *Id.* at 6-7.

Next, the Magistrate Judge determined that Shelby failed to demonstrate evidence of "actual innocence" sufficient to permit this Court to hear her untimely claims. *Id.* at 9. He noted that Shelby's allegations of newly changed science merely showed that there is controversy within the medical community regarding – not a

total repudiation of – Shaken Baby Syndrome, and that evidence of Little Bryan's blunt force injuries, in addition to the evidence of shaking, and alternative theories explaining his death were presented and ultimately rejected by the jury at trial. *Id.* at 10-18. Viewed as a whole, the Magistrate Judge found that Shelby failed to show that "no reasonable juror would have found [her] guilty." *Id.* at 9.

Finally, the Magistrate Judge rejected Shelby's request for an evidentiary hearing, concluding that she had already received a lengthy evidentiary hearing in state court, and that a "substantial factual record already exists on all her claims." *Id.* at 19-20.

## II. <u>DISCUSSION</u>

A.   <u>Relevant legal standards</u>

Where a party objects to a magistrate judge's proposed findings and recommendations, the Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3); *Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir. 1991) (holding that a party filing written objections is "entitled to a de novo review by an Article III judge as to those issues to which an objection is made"). However, a court is not required to make new findings of fact in order to conduct a de novo review, *Warren v. Miles*, 230 F.3d 688, 694 (5th Cir. 2000), nor is it required to "reiterate the findings and conclusions of the magistrate judge," *Koetting v. Thompson,* 995 F.2d 37, 40 (5th Cir. 1993). The Court also need not consider "[f]rivolous, conclusive or general objections." *Battle v.*

6

*U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). Where there has been no

objection to a magistrate judge's ruling, a clearly erroneous, abuse of discretion, and

contrary to law standard applies. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th

Cir. 1989). After conducting the required review, the district judge "may accept,

reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge [and] may also receive further evidence or recommit the matter to

the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") provides in

relevant part that:

> A 1-year period of limitation shall apply to an application for a writ of
> habeas corpus by a person in custody pursuant to the judgment of a
> State court. The limitation period shall run from the latest of –
>
> (A)  the date on which the judgment became final by the conclusion of
>      direct review or the expiration of the time for seeking such review;
> (B)  the date on which the impediment to filing an application created
>      by State action in violation of the Constitution or laws of the
>      United States is removed, if the applicant was prevented from
>      filing by such State action;
> (C)  the date on which the constitutional right asserted was initially
>      recognized by the Supreme Court, if the right has been newly
>      recognized by the Supreme Court and made retroactively
>      applicable to cases on collateral review; or
> (D)  the date on which the factual predicate of the claim or claims
>      presented could have been discovered through the exercise of due
>      diligence.

28 U.S.C. § 2244(d)(1)(A)-(D). This statute is construed as a statute of limitations,

and not a jurisdictional bar, such that it can be tolled. *See Davis v. Johnson*, 158

F.3d 806, 811 (5th Cir. 1998). Here, the Magistrate Judge concluded that Shelby's

conviction and sentence became final on April 9, 2002, and that the one-year statute

of limitations to file a habeas petition expired on April 9, 2003. R. & R. [42] at 5.

Shelby argues that because the factual predicate of her claims could not have been

discovered until January 25, 2015, or alternatively, June 18, 2018, her Petition [1]

was timely under § 2244(d)(D).

The Court is also mindful that Congress, through AEDPA, 28 U.S.C. § 2241,

et seq., has limited federal court review of habeas petitions filed on behalf of

persons in state custody. *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013) ("AEDPA erects a

formidable barrier to federal habeas relief for prisoners whose claims have been

adjudicated in state court."). Under 28 U.S.C. § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).

"A decision is contrary to clearly established federal law under § 2254(d)(1) if

the state court (1) arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law; or (2) confronts facts that are materially

indistinguishable from a relevant Supreme Court precedent and reaches an

opposite result." *Simmons v. Epps*, 654 F.3d 526, 534 (5th Cir. 2011) (quotations

omitted). A decision involves "an unreasonable application of clearly established

federal law" under § 2254(d)(1) "if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts; or (2) either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* (quotations omitted). A state court's application of law to facts is unreasonable only if it is "objectively unreasonable," not merely "incorrect or erroneous." *Id*. The state court's factual determinations are presumed to be correct pursuant to § 2254(e)(1) and can only be rebutted with clear and convincing evidence. *Id.*

"Section 2254(d) sets forth a 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Miller v. Thaler*, 714 F.3d 897, 901 (5th Cir. 2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 171 (2011)). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

B.   Petitioner's Objection [44] should be overruled

Shelby objects to the Report and Recommendations [42] on ten separate grounds:[1] (1) that at a minimum, she is entitled to an evidentiary hearing, Obj. [44] at 1-4; (2) that she presented sufficient evidence of actual innocence to overcome

---

[1] The Court notes that its enumeration of grounds do not necessarily match the enumeration Shelby uses in her Objection [44].

any applicable time bar, *id.* at 4-6; (3) that she is entitled to equitable tolling of the statute of limitations, *id.* at 7; (4) that Dr. Riddick's changed testimony and additional expert witnesses who testified at the post-conviction relief hearing constitute newly discovered evidence, even if their opinions rely on information that was available at the time of trial, *id.* at 8-14; (5) that she presents substantive newly discovered evidence "worthy of reversal and not simply a 'battle of the experts,'" *id.* at 14-23; (6) that she is entitled to relief because "false evidence" was presented to the jury regarding the nature of blunt force injuries and short falls, violating due process, *id.* at 22-29; (7) that her Petition [1] was timely filed based on the factual predicate of her claims, *id.* at 29-37; (8) that the fact that she was alone with Little Bryan is not an indicator that she murdered him, *id.* at 37; (9) that the evidence shows an unreasonable application of clearly established case law, *id.* at 37-38; and (10) that her wrongful conviction is a miscarriage of justice worthy of review and reversal, *id.* at 38-40. For the reasons that follow, Shelby's Objection [44] should be overruled.

1.   <u>Ground 1</u>

Ground 1 objects to the Magistrate Judge's finding that this case can be resolved without an evidentiary hearing in this Court. *Id.* at 1. Shelby argues that she has presented evidence of her actual innocence, and that "[a]t a minimum, Petitioner is entitled to an evidentiary hearing to allow this Court to assess the veracity of the alleged facts." *Id.* The Court disagrees.

28 U.S.C. § 2254(e) provides:

**(1)** In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

**(2)** If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –

> **(A)** the claim relies on – **(i)** a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or **(ii)** a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> **(B)** the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(1)-(2). "If the factual record on a claim was fully developed in the State court proceedings, then the Petitioner is not entitled to an evidentiary hearing." *Elliott v. Johnson*, No. A-99-CV-606 JN, 2001 U.S. Dist. LEXIS 6148, at *2 (W.D. Tex. Mar. 1, 2001); *see also Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022) (reiterating that "§ 2254(e)(2) applies only when a prisoner has failed to develop the factual basis of a claim") (internal quotations omitted). "Rather, the federal court applies the presumption of correctness codified in § 2254(e)(1), and either adopts the factual findings of the State court, or, if the petitioner rebuts the presumption of correctness, makes its own findings from the fully developed factual record." *Elliott*, 2001 U.S. Dist. LEXIS 6148, at *2.

Shelby is not entitled to an evidentiary hearing in this Court because the factual record was fully developed in state court during her post-conviction relief hearing, which lasted several days. Shelby indicates that the facts to be further

developed here include changing science and theories of causation regarding

Shaken Baby Syndrome, Dr. Riddick's changed expert opinion, and testimony from

other expert witnesses. Obj. [44] at 2-4. Critically, these issues were fully developed,

argued, heard, and considered at Shelby's evidentiary hearing in the Harrison

County Circuit Court, and Shelby has failed to demonstrate otherwise. *See, e.g.,*

Mem. [2] at 34-42 (discussing "newly discovered scientific evidence" and expert

testimony by Dr. Riddick, pathologist Dr. Janice Ophoven, diagnostic radiology

expert Dr. Julie Mack, and biochemical research expert Dr. Kenneth Monson at the

post-conviction relief hearing beginning on April 24, 2018 in state court); *id.* at 44-

47 (discussing recognition of changes in science and medical community opinion

since Shelby's prosecution and conviction); Ex. [10-30] at 44 (post-conviction relief

hearing testimony by Dr. Ophoven discussing the changes in science regarding

Shaken Baby Syndrome "at the turn of the century, 2001, 2002"); *id.* at 91-105

(post-conviction relief hearing testimony by Dr. Monson discussing changed science

regarding injuries caused by short falls and opining that Little Bryan's injuries

could have been caused by a fall from his bed); *id.* at 185-202 (post-conviction relief

hearing testimony by Dr. Mack discussing the same); *id.* at 252-56 (post-conviction

relief hearing testimony by Dr. Riddick discussing the basis of his changed opinion

regarding Little Bryan's cause of death).

　　　Even if Shelby were to be able show a failure to fully develop the factual basis

in state court, this Court, in its discretion, still finds that it "has before it sufficient

facts to make an informed decision regarding the merits of a claim," and that an

evidentiary hearing is not necessary. *See Thomas v. Hancock*, No. 1:09-cv-35-HSO-JMR, 2011 U.S. Dist. LEXIS 96797, at *4-5 (S.D. Miss. Aug. 25, 2011); *Shields v. Dretke*, 122 F. App'x 133, 155 (5th Cir. 2005) ("[O]vercoming the narrow restriction of § 2254(e)(2) does not guarantee a petitioner an evidentiary hearing, it merely opens the door for one. The district court still retains discretion to grant or to deny an evidentiary hearing under Rule 8 of the Rules Governing Section 2254 cases." (internal citations omitted)); *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000) (where the failure to develop the factual basis of the claim in state court is not due to the petitioner's actions, the district court retains discretion over the decision to grant an evidentiary hearing). Shelby is not entitled to an evidentiary hearing in this Court.

2.    Grounds 2, 4, 5, and 10

Ground 2 argues that Shelby has presented sufficient evidence of actual innocence to overcome any applicable time bar and "pass through the *Schlup/McQuiggin* "gateway." Obj. [44] at 4-6. It further contends that new expert testimony opining that Little Bryan's cause of death was accidental, and the amendment by Dr. Riddick to his death certificate changing the cause of death from "homicide" to "accidental," are "two pieces of critical new evidence that would cause any reasonable juror to doubt Petitioner's conviction." Obj. [44] at 5. Ground 4 argues that Dr. Riddick's changed testimony and new expert opinions constitute "newly discovered evidence" even if they rely on information that was available at the time of trial. *Id.* at 8-14. Ground 5 argues that this substantive evidence is "not

simply a 'battle of the experts'" as the Magistrate Judge found in the Report and Recommendations [42], *id.* at 14-23, and Ground 10 argues that as a result of this newly discovered evidence, Shelby's conviction is wrongful and constitutes "a miscarriage of justice worthy of review and reversal," *id.* at 38-40. The Court disagrees on all four Grounds.

First, the *Schlup/McQuiggin* gateway is an exception for miscarriage of justice that only "applies to a severely confined category: cases in which new evidence **shows it is more likely than not that no reasonable juror would have convicted the petitioner**." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995) (internal quotations omitted; emphasis added)).  As the Report and Recommendations [42] points out, Dr. Riddick's testimony at the post-conviction relief hearing contained inconsistencies that raise credibility questions. *See, e.g.,* R. & R. [42] at 11; Ex. [10-30] at 250-263 (discussing Dr. Riddick's mistaken belief that Little Bryan had been injured during a car accident on the way to the hospital, when no such accident ever took place); *id.* at 299-305 (testimony by Dr. Riddick acknowledging that he signed his affidavit and changed his opinion prior to reviewing his own trial testimony and files). In addition to this concern, witness recantations such as Dr. Riddick's are viewed with "extreme suspicion." *Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005). This remains true when the recanting witness was heavily relied upon by the prosecution at trial, and especially where the state habeas court, after comparing the recantation to prior testimony and other trial evidence, found it to be unpersuasive. *See Tate v. Davis*,

14

No. 2:15-CV-490, 2016 U.S. Dist. LEXIS 175175, at *13-15 (S.D. Tex. July 22, 2016) (concluding that recantations of testimony by a sexual assault victim and her mother did not outweigh other evidence of guilt, that the petitioner failed to establish that no reasonable juror would have found him guilty in light of recantations, and that the "AEDPA presumption of correctness standard is afforded to the state habeas court's conclusion that the affidavits are not credible.").

Next, actual innocence claims are strictly limited to those that are supported by "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court is unconvinced that the change in or "new" expert testimony from Dr. Riddick or others regarding Shaken Baby Syndrome generally, or Little Bryan's injuries specifically, constitutes "newly discovered" evidence when it relies on science, studies, and records that have existed since the time of trial, or at a minimum, since long before Shelby sought post-conviction relief on this basis in 2015. Thirty-one of the thirty-seven medical studies cited by Shelby in her Amended Writ [10] are dated before 2015, with several of them dated before the time of Shelby's trial. Am. Writ [10] at 15-16. This supports the conclusion that the purported changes in science relied upon by Shelby's experts to question the validity of a Shaken Baby Syndrome diagnosis were not newly discovered. *See Hicks v. Goodwin*, No. 18-1564, 2019 U.S. Dist. LEXIS 31644, at *3 (W.D. La. Feb. 25, 2019) (noting that "the sources in the medical and legal literature that [the petitioner] cites for the proposition that [Shaken Baby

Syndrome] may not exist were published between 2001 and 2012," weighed against a showing of actual innocence because the publications were not newly discovered).

Similarly, the fact that the purportedly new testimony by Shelby's experts relied upon Little Bryan's medical records and autopsy report, which were available at the time of trial, belies any argument that this evidence is newly discovered. *Id.* at 2-3 ("While it is true that in 2013 Hicks did not yet have the expert report, Hicks has failed to explain why he waited until June 2015 . . . to first approach his expert. Hicks certainly did not need to await further factual development—the records on which his expert relied were created in 2005 and 2006.") (internal citations omitted); *see also* R. & R. [42] at 8, 12 (noting that Shelby's experts relied on medical records that existed at the time of trial, including autopsy records, medical records, and CAT-scans taken in 1997, yet waited to seek out these experts until 2015).

Moreover, although Shelby takes issue with referring to the discourse and disagreement regarding Shaken Baby Syndrome within the scientific community as a "battle of the experts," she fails to cite any authority in her Objection [44] that instructs otherwise or holds that such a diagnosis is decidedly invalid, unscientific, or rejected. Obj. [44] at 14-16. And numerous courts have recognized that a diagnosis of Shaken Baby Syndrome is a matter of debate and presents a question of credibility. *See, e.g., Giminez v. Ochoa*, 821 F.3d 1136, 1145 (9th Cir. 2016) (finding Shaken Baby Syndrome to be a "vigorous debate . . . within the scientific community" rather than a "repudiation"); *Burns v. Wasington*, 2019 WL 3067928, at

*5-6 (E.D. Mich. July 12, 2019) (finding the state appeals court's conclusion that Shaken Baby Syndrome is not "junk science" but "a question of credibility, a so-called battle of the experts," to be reasonable); *Johnson v. Espinoza*, 2020 WL 1028504 *15 (S.D. Calif. Mar. 3, 2020) (summarizing that "far from being junk science." Shaken Baby Syndrome "remains the subject of significant debate among medical professionals") (internal quotations omitted).

Finally, the Court agrees with the Magistrate Judge's findings that other evidence of Shelby's guilt presented at trial, namely evidence of blunt force trauma separate from injuries from shaking, continues to weigh against her claim of actual innocence. *See* Ex. [15-9] at 131 (trial testimony by Dr. Riddick that Little Bryan experienced shaking and impact, and that blunt force injuries are distinct from Shaken Baby Syndrome); Ex. [10-30] at 337 (post-conviction relief hearing testimony by Dr. Riddick that blunt force injuries are separate from Shaken Baby Syndrome); Ex. [15-8] at 123-24 (trial testimony from treating ER physician Dr. Max Odom that Little Bryan had bruises on his head and armpits that were three to five days old, as well as significant blunt trauma to the brain).

Taken together, the evidence does not establish that it is more likely than not that no reasonable juror would have convicted Shelby. *McQuiggin*, 569 U.S. at 386. Even if the proffered "new evidence" raises questions, it is "not enough for [a petitioner] to show that a reasonable doubt exists in the light of the new evidence." *Acker v. Davis*, 693 F. App'x 384, 393 (5th Cir. 2017). For these reasons, Shelby has failed to make a showing of actual innocence sufficient to pass through the

*Schlup/McQuiggin* gateway, and she cannot overcome the statute of limitations

imposed by 28 U.S.C. § 2244(d)(1).

3.      Ground 3

Ground 3 argues that Shelby is entitled to equitable tolling of the statute of

limitations. Equitable tolling is available if a petitioner demonstrates: "(1) that [she]

has been pursuing [her] rights diligently, and (2) that some extraordinary

circumstance stood in [her] way and prevented timely filing." *Holland v. Florida*,

560 U.S. 631, 649 (2010) (quotations omitted). The petitioner bears the burden of

proof to demonstrate "rare and exceptional circumstances" warranting the

application of equitable tolling. *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir.

2002).

Shelby has failed to carry her burden. She attributes her delay in filing a §

2254 petition to the fact that "Hurricane Katrina destroyed her case file and her

copy of the child's medical records," forcing her to return to court to obtain those

records. Obj. [44] at 7. However, the record is clear that Shelby did not attempt to

seek any post-conviction relief in the time between her conviction in 2000 and

Hurricane Katrina in 2005.

Shelby further maintains that pivotal evidence supporting her innocence was

not readily available before Hurricane Katrina. *Id.* As discussed in greater detail

below, the Court is of the opinion that Shelby has failed to establish that the factual

predicate of her claims did not become discoverable until either 2015 or 2018, and

that much of the evidence she contends is "newly discovered" had in fact been

available to her for years, even before Hurricane Katrina. Finally, Shelby's "actual innocence claim also does not constitute a 'rare and exceptional' circumstance" for purposes of equitable tolling, "given that many prisoners maintain they are innocent." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Tate v. Parker*, No. 4:06CV99 DPJ-FKB, 2010 U.S. Dist. LEXIS 62572, at *9 (S.D. Miss. June 22, 2010) (noting that a mere claim of actual innocence does not constitute a "rare and exceptional" circumstance, and that there is "no precedent in this circuit whether" even a showing of actual innocence "may equitably toll the statute of limitations"). In sum, Shelby has not shown that she was diligently pursuing her rights and that some extraordinary circumstance stood in her way and prevented a timely filing of her Petition [1]. Shelby is not entitled to equitable tolling.

4.    <u>Ground 7</u>

Ground 7 objects to the Magistrate Judge's rejection of Shelby's argument that her habeas petition became due in either 2015, when she received reports from medical experts on the changes in science regarding Shaken Baby Syndrome, or 2018, when Little Bryan's death certificate was amended, because those were the dates on which the factual predicate of her claims could have been discovered through the exercise of due diligence. Obj. [44] at 29-37; *see* 28 U.S.C. § 2244(d)(1)(D). After a de novo review of the record, the Court agrees with the Magistrate Judge that the factual predicate of Shelby's claims could have been discovered prior to 2015 through the exercise of due diligence, and that the Petition [1] is therefore untimely.

Critically, "[t]he United States Court of Appeals for the Fifth Circuit has held that [the date on which the factual predicate of the claims could have been discovered through the exercise of due diligence] means the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *Jenkins v. Mills*, No. 1:17cv120-HSO-MTP, 2018 U.S. Dist. LEXIS 100603, at *7 (S.D. Miss. June 15, 2018) (citing *In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018) (quotation omitted)). Regardless of when Shelby actually received reports noting a change in science regarding Shaken Baby Syndrome, it is apparent that she should have been on notice of the debate about or changes in opinions regarding Shaken Baby Syndrome at the time of trial, or at least long before 2015. For example, Dr. Riddick testified at Shelby's post-conviction relief hearing in state court that "prior to the trial in October 2000, in June and April of 2000 [he] received a draft of an article . . . indicating to [him] that there were changes in the opinion of forensic pathologists about short distance falls [and] about the mechanism of the [S]haken [B]aby [S]yndrome. . ." Ex. [10-30] at 254. At the same hearing, Dr. Ophoven testified that the shift in science "occurred around the turn of the century, 2001, 2002. . . and this is when the conversations started to really take hold about whether or not [Shaken Baby Syndrome] was a safe diagnosis to make." *Id.* at 44. Additionally, Shelby's Petition [1] relies on numerous scientific sources published prior to 2012. *See* R. & R. [42] at 7 (noting that twenty-two of the medical studies cited in the Amended Writ [10] were

published between 1968 and 2005, and that thirty-one were published prior to 2015).

The record is clear that Shelby's proffered factual predicate is insufficient to delay the commencement of the statute of limitations under 28 U.S.C. § 2244(d)(1)(D), and thus the Petition [1] is untimely. *See Flanagan v. Johnson*, 154 F.3d at 198–99 (5th Cir. 1998) (petitioner is "confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim"); *Riley v. Dir.*, TDCJ-CID, 2021 WL 5277159, at *5 (N.D. Tex. Feb. 26, 2021) (new evidence based on an advancement in scientific knowledge did not constitute a new fact "because it recounts studies from years earlier").

5.   Grounds 6, 8, and 9

Ground 8 "objects to the PR & R's [sic] finding that because Shelby was alone with the child, she murdered the child." Obj. [44] at 37 (citing R. & R. [42] at 18). The Report and Recommendations [42] makes no such finding. Rather, it merely notes that "[i]t was undisputed" by the parties "that Shelby was the only adult with [Little Bryan] when he suffered his fatal injuries," and that this fact presents difficulties for Shelby in demonstrating that no reasonable juror would find her guilty for purposes of establishing a claim of actual innocence. R. & R. [42] at 18. This Ground should be overruled. *See Davis v. Turner*, No. 5:20-cv-149-TBM-MTP, 2021 U.S. Dist. LEXIS 136596, at *4 (S.D. Miss. July 22, 2021) (overruling objections that "are not related to a specific finding within the Report and Recommendation" without a de novo review).

Ground 6 argues that the Report and Recommendations [42] failed to find that any of the substantive claims raised in the Petition [1] – namely that "false evidence" presented to the jury regarding the nature of blunt force injuries and short falls violated her due process – entitle her to relief. Obj. [44] at 22-29. Ground 9 argues that "[t]he evidence shows an unreasonable application of clearly established case law." *Id.* at 37. These last remaining Grounds should similarly be overruled, because the Report and Recommendations [42] did not make a finding on the merits of either question.

"Before considering the merits of a petition under 28 U.S.C. § 2254 for a writ of habeas corpus, the Court must first determine if all procedural steps necessary to preserve each issue for federal review have been taken. **The first consideration is whether the petition was timely filed**." *DuBose v. Superintendent Unknown McClure*, No. 2:21-cv-00099-HSO-RHWR, 2022 U.S. Dist. LEXIS 58504, at *3-4 (S.D. Miss. Feb. 17, 2022) (emphasis added). The Report and Recommendations [42] concluded that the Petition [1] and Amended Writ [10] should be dismissed as untimely, and that Shelby failed to meet the requirements of showing "actual innocence" in order to bypass the time bar. R. & R. [42] at 20-21. The Court agrees that the Petition [1] and Amended Writ [10] should be dismissed for these reasons. Thus, it need not decide "whether . . . under § 2254(d)(1), a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law," and this Ground should be overruled. Obj. [44] at 37; *see Davis* 2021 U.S. Dist. LEXIS 136596, at *4 (overruling objections that "are not related to a specific finding

within the Report and Recommendation" without a de novo review); *Battle*, 834 F.2d at 421 (noting that the Court need not consider "general" objections).

Shelby's false testimony argument is also unavailing because "mere disagreement between experts is insufficient to show that testimony is false or misleading." *Robertson v. Davis*, 715 F. App'x 387, 393 (5th Cir. 2017). Likewise, "[i]nconsistency is not enough to prove knowing falsity . . . [and] [t]he same is true where the disagreement is between witnesses." *Ho v. Thaler*, 495 F. App'x 488, 494 (5th Cir. 2012) (internal citations omitted) (citing, among others, *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988) (inconsistency between various witnesses creates a credibility question for the jury)).

III. <u>CONCLUSION</u>

To the extent the Court has not specifically addressed the parties' remaining arguments, it has considered them and determined that they would not alter the result. After a de novo review of the record, the Court concludes that the Objection [44] to the Magistrate Judge's Report and Recommendations [42] should be overruled and the Report and Recommendations [42] should be adopted as the opinion of this Court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Petitioner Tasha Mercedez Shelby's Objection [44] to the Magistrate Judge's Report and Recommendations [42] is **OVERRULED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Report and Recommendations [42] entered by United States Magistrate Judge Robert P. Myers,

Jr., in this case on February 7, 2023, is **ADOPTED** in its entirety as the finding of this Court.

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that, Respondents Burl Cain, Marc McClure, and Lynn Fitch's Motion [16] to Dismiss Petitioner Tasha Mercedez Shelby's Petition [1] under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a person in state custody and Amended Writ [10] of Habeas Corpus is **GRANTED.**

      **IT IS, FURTHER, ORDERED AND ADJUDGED** that, Petitioner Tasha Mercedez Shelby's Petition [1] under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a person in state custody and Amended Writ [10] of Habeas Corpus are **DISMISSED WITH PREJUDICE**. The Court will enter a separate Final Judgment in accordance with Federal Rule of Civil Procedure 58.

      **SO ORDERED AND ADJUDGED**, this the 17th day of March, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE